Good morning, Your Honors. May it please the Court, Melissa Baldwin on behalf of the Appellant Aminta Smith. We are asking the Court to vacate Miss Smith's convictions with instructions to enter a judgment of acquittal on counts 21 through 23 because the convictions aren't supported by substantial evidence and to order a new trial on the counts 1 through 20 because of the District Court's evidentiary error in admitting summary testimony. First, the government's minimal evidence of an ambiguous nature regarding Smith Tax and Insurance Group's business form and ownership required the jury to engage in impermissible speculation to reach the ultimate conclusion that her returns were false for not reporting Smith Tax and Insurance's gross receipts on a Schedule C. So here, this case is akin to Chief Judge Gregory's opinion in Bonner, where the government in that situation was relying on the jury to conclude from their forensic evidence that the predominant DNA profile allowed the jury to thus conclude that the defendant was the last person to wear the baseball cap involved in the robbery. And this Court pointed out that not every articulable inference is proper. And indeed, the Second Circuit also drew this distinction saying that not every, not simply because something is within the realm of possibility Didn't Miss Smith herself tell the agent that she'd been the sole owner of the Touched by an Angel's tax service? Yes, Your Honor. But that's still, even taking that evidence in the light most favorable to the prosecution She was not telling the truth when she told the agent that she was the sole owner of that tax business? We're not saying that. Even taking that evidence in the light most favorable still requires the jury to engage in impermissible speculation. They have to first infer that Miss Smith's belief that Touched by Angel's tax services was a sole proprietorship was in fact correct and then second also to infer that Touched by Angel's tax services was indistinguishable and frozen in time with Touched by Angel's tax services in 2009. Well, the clients, her clients who also testified seemed to be of the impression that she was the owner and their tax preparer as well. Sure. Even though she didn't specifically tell them that. Right. But simply because a customer may believe someone is an owner is not enough to establish that. But she held herself out in that manner. So, well, I don't think the customers necessarily testified to that. And even taking that as it is, only five customers testified. The government was only able to How many does the government need? Well, given the fact that in 2014 alone there were over 300 returns submitted At some point it would be cumulative. I'm sure you would be objecting if they had more than 15 as cumulative. So why is five not enough? One could be enough, right? No, we don't think one is enough. For a particular count. We don't think one is enough, but because simply the customers believe someone is an owner is not sufficient to find a return as false as a matter of law. As the government's own witnesses testified to in JA 78 and 102, a business, if it took a different form, if it had more than one employee, if it was a shareholder, partnership, it would have reported its income on a different form. And, in fact, the IRS agent or, excuse me, records custodian admitted they never even bothered to search to see if Smith Tax and Insurance reported its gross receipts in another form. And it could be sitting. Could the jury have taken the transactions from Santa Barbara, that Santa Barbara service? Take 2015. There was about $130,000 transmitted to her bank account. She opened it up in the name of the service, but she was the only authorized signator. And then she took money from that for her own services and put it in some personal bank accounts. And the only money going out of that bank account to Benjamin was one payment for employment, which on the check noted that she approved it. And could the jury infer that all that money was her money then? I mean, she used it. She received it. She put it in her own bank accounts. She approved any other purchasers. She was the only signator on the bank account of the tax service. Well, Judge Niemeyer, I think there are two problems with that analysis. No, I'm not saying it's conclusive. I'm asking could the jury conclude that? It seems to me it looks like she is the owner. She runs the whole shop and she got all the money and she used the money at her own discretion. Well, you know, if someone other than Ms. Aminta Smith received income, then the omission of a Schedule C is true as a matter of law. And that's, you know, the Ninth Circuit in the Lanham case, and I think the government conceded this in its briefing in the Sixth Circuit Williams case. And so the fact that Benjamin Smith, the fact there was evidence that Benjamin Smith received one check to Benjamin Smith in a minor amount, $2,000 or something out of $130,000, and all the rest she managed, she used, she put it in her own accounts and they weren't put on her tax return. And the question is, quite apart from that, the question is was she observing corporate form? But we're not talking about absolute proof or conclusive. We're talking about was there enough for a jury to infer that she received income on which she didn't pay taxes? Well, Judge Niemeyer, here the inference goes to the existence of an element. The falsity of the return is an element. So it's not enough for the jury to maybe be able to infer. There has to be sufficient evidence for them to conclude beyond a reasonable doubt. It's not enough that Ms. Smith is probably guilty or her return is probably false. It has to be false beyond a reasonable doubt. And so going back, and so Judge Niemeyer, I think this might help you in what you're getting at here. And, you know, the government, as you pointed out, you know, there was a substantial amount of money going from the bank account to Ms. Amento-Smith's personal account. Now, the government failed to charge Ms. Amento-Smith with underreporting her total income for 2015, which was the only year the government submitted bank records for. So had the government charged Ms. Amento-Smith? Well, you know, the generalization doesn't exclude all the evidence. In the prior years, there were different tax corporate forms or business forms. She kept changing the name. She started out with tax service, then it went to accounting service, then it went to tax and insurance, that type of thing. But my point is, I was just taking that as one year in which it's pretty clear that the government didn't charge Ms. Amento-Smith. It was pretty clear she was running the show, and she brought all that income in, and she tried to shelter it under various, I don't know what her thinking was. But clearly the government was deprived of taxes, it seemed to me. At least that's what the jury concluded. Well, right. But our argument doesn't depend on the fact of whether or not the IRS was deprived of taxes. It counts on whether or not the government charged the allegation it made in the indictment, which was that the omission of a Schedule C that requires reporting a certain amount of money, which is sole proprietorship, was false. She wasn't charged with underreporting income, was she? Well, she wasn't charged with underreporting her total income for 2015, which was the only year the government submitted bank records for. She was charged with underreporting her total income for 2013 and 2014, but there is no bank records for those years. The only evidence of her income that year corresponds with her employee wages from Smith Tax and Insurance, which were duly reported on those returns. So I would like to switch over now to the summary evidence question. And here, the government's admission on this appeal that they used Agent Archie's summary testimony as substantive independent evidence of guilt renders the admission erroneous under this court's precedent in OLAID. In that case, they found that the government submitting bank records that were not objectively accurate, but instead subjectively showed the government's theory underlying the bank records in that case, rendered it a 611A summary. And 611A summaries are admitted only to help the jury determine the truth in a complex case. What about the fact that appellant offered a curative instruction, a limited instruction as a cure to any objection appellant may have had, did not object to the demonstrative exhibit that the witness used, and then also did not object to the general jury instruction about summary evidence and how it's to be used? Well, the defense did object to the summary evidence. And then before the court could rule on that objection, the defense itself offered a cure by way of limiting objection, which it then did not object. Judge Sacker, we disagree. The court had made a definitive ruling at that point. Judge Cogburn said that this evidence is fine. You know, I don't see it going, and it was only at that point when Judge Cogburn was allowing the summary witness to go on and telling them, all right, keep doing what you're doing, that we offered a limiting instruction. What J.A. should I look to for that? I think it was J.A. 271. I don't want to slow you up. Sorry. So, yes. And so once Judge Cogburn had made a definitive ruling under Rule of Evidence 103B, once the court makes a definitive ruling, they do not have to thereafter renew their objection. And so once it was in, it was in. And the problem here is, you know, we offered the curative, we offered the curative instruction, which, you know, was insufficient upon reflection. But nonetheless, there's, this isn't a case of invited error, because here the error wasn't from the defense. The defense was trying to cure it. And so here the error came about from the government offering summary testimony that wasn't admissible. But then did you, you didn't object to the final set of jury instructions about this summary witness? We did not. But then there was also the opportunity at the close of the trial when the jury was instructed to try to correct what you thought was not enough, but appellant didn't object to that, to those jury instructions either. No, we did not. But I, no, we did not. But we're not making a jury instruction error here. The error, the error we're claiming on appeal is the admissibility determination itself, which we did object to. Your position is that you preserved by making the objection, right? Yes. And the court, the court had ruled and you preserved it. And then the other part, as you admittedly, I think, quite, I guess, forthcoming, that that may not have been the best off of secure, but you were trying to do some damage control then. Correct. We were. And I think part of this is, comes, I'm sorry. Go ahead. I think part of this comes from some confusion over these summary testimonies and evidence and how they get in here. And so the government pointed to rule 1006. And under rule 1006, those summaries are independent evidence of guilt. And so there's a suggestion that any summary can be both a 1006 and a rule 611A. And that's just a false dichotomy. I did find the transcript. The court didn't just say what she's doing is fine. The court said, I think, most of what she's doing is fine. I don't have any problem with it. But then went on to say that there's a couple times she is getting over the line and started to tell the government how best to do it when the appellant counsel jumped in and said, I think this might be cured if we get a limiting instruction. So I did look at what you pointed me to. And I don't think the court ruled before the limiting instruction was offered. We can disagree, but I don't read it that way. Okay. So I guess we disagree on that point. Didn't you object when she was first offered? Yes. So we objected when she was first offered. And so I guess what Judge Thacker is getting at is when a defendant offers a curative instruction that is not, in fact, curative, does that thereafter waive the evidentiary objection that was made? And, you know, I don't think that is. And just going off the fact, you know, we want the parties to try and, you know, to try and cure errors in the trial court. And we want them to make objections. And we want them to help the district court on these hard evidentiaries. This was all up the cough. This was not, you know, an excellent... You know, if you look at the testimony, early on you objected. And that testimony seemed to be all right under the 611 standards. The expert was trying to help the jury understand what the significance of the evidence was. There was a lot of evidence being pulled together. There were several times there were questions that I believe pretty clearly overstepped the right type of testimony, giving opinions as to the overall conclusion. And I think that was what the district judge was referring to. And so I think to generalize, you know, I don't think that the district judge was trying to generalize. I think to generalize about the witness is not useful. I think we'd have to take question by question and look which ones are okay and which are not, and then determine whether they're harmful. I think the court's curative instruction was intended to cabin in those. There were about three or four of them that were quite questionable, to cabin in those. But the majority of the questions, it seemed to me, were just normal 611-type questions that seemed to fall within the heartland of what's permissible. This was not a 1006-type situation. 1006, as you know, is a summary of documents when they're too voluminous, documents that are in evidence. Yes, Judge Niemeyer. So two responses to that. And first is that while we acknowledge, summarize the evidence, we acknowledge that there's a lot of evidence. And that summarizing oral testimony in a complex case could fall under Rule 611-A. We disagree that Rule 611-A covered this here. I mean, if you look at it, at page 256 is the taxpayer testifying. I want to give a particular question because there are, I would think, most of the early questions, the witness was well within the heartland. And you weren't objecting also. You made an initial objection. But as the questions went on, it then progressed. And I think, rightly, there were points where questions were asked that pulled some testimony from the witness that he should, she should not have been giving. And I think you objected or the Court made observations, said, yeah, there was some over the line, and issued the curative instruction. But even without the curative instruction, if we look at question by question, I think you're addressing, your argument has to be focused on a small percentage. Of the overall questions that the witness was given. But it seems to me if you press the argument, you ought to particular question and see whether the Court made an error, whether an objection made the error. Because not all of them were, clearly not all of them were objectionable. So I see my time has expired, but may I respond to your question? Okay. And so, well, what happened here, I understand question by question, but first of all, you know, we don't believe there is anything requiring that. Where our initial objection at JA270 covered? No, it's just a question of how do we know what to rule on? I mean, the testimony as a whole was not erroneous, and a lot of the questions weren't. So if we're going to rule on your appeal, we ought to be getting a question here and there, and then determine, number one, was it important? And number two, was it improper? And my guess is you're going to be able to make that case that some of them were improper. And then the next question is, okay, was that harmful? And the next question is, did the instruction cure it? I'm sorry, Your Honor, I misunderstood your question. Is it still all right if I answer it? I'm over? Okay. So we think most, we think it was erroneous because this wasn't a complex case where Rule 611A was necessary. But that said, we think the cleanest way for the Court to resolve this is to go to the, you know, the Supreme Court. And we went to the witness' testimony, I believe it was at 281, where she is asked about the demonstrative Exhibit 145. And there, the summary witness went beyond the evidence to drawing her own inference that not only did Smith Tax and Insurance receive $300,000 in gross receipts, but those gross receipts went to Ms. Amenta Smith. Now, that ties back in to the insufficiency question. And so, and then they relied on that in their oral testimony. And then they relied on that in their oral argument, excuse me, in their closing argument to, for the jury to find willfulness on Counts 1 through 20. So we think, so we believe that that question right there was absolutely erroneous and it violates. What aspect was? That the money went to her? Yes. So there. There's just numerous documents in there of her withdrawing from these accounts with her initials on them. I mean, it's pages of it. But due respect, there are only evidence of some payments in 2015, and her testimony went to years 2013, 2014, and 2015. And was there any testimony about income other than 2015? From a fact witness? So, no. For 2015 was the only one with bank records. And then to the extent there is any other evidence, it's her employee wages that were reported on her personal returns. Right. So then the summary witness was allowed to testify that this $300,000 and no fact witness supported that, other than the part for 2015. I mean, precisely, Chief Judge Gregory. And I think, you know, and this is something the government does routinely in tax prosecutions. They have their IRS agent go through the bank records and show the unreported income. Or, you know, they do in the Williams case and they show that the reported income doesn't show the unreported income. It doesn't match up with the lifestyle. You can't make $30,000 and have a million-dollar house. This was not a net worth case. And this was not an expert. She was supposed to tell the jury what they heard. Precisely. And so this case really is a good example of how summary evidence can be abused. And this notion that it's appropriate simply because it's a white-collar case is wrong, and it's what got the government into trouble. In this situation. So if there are no further questions, I will reserve the rest of my time. Thank you, Ms. Baldwin. May it please the Court, Amy Ray for the United States. I'll begin with where the Court ended and the question about summary evidence. And I want to walk through just a minute exactly what was asked, what kind of testimony, and what was objected to. I would like to start with beyond 2015, what was the evidence of the income underreporting supported that charge? Well, every single one of the fact witnesses, every single one of the clients who testified, all five, said that they paid Ms. Smith. Because she worked on that when they were there. She worked on their tax returns. That sounds like an employee or worker. Well, except for the fact that she was Touched by Angels. She was also Smith Insurance and Tax and Insurance Group. In the very first application that she made to the... They testified to that, those five people? No, no, no. But if I may... I just want to make sure that the people who testified, those five people, they testified and we went there. She worked on their taxes. That's right. When they saw her business from the beginning, from 2011 until 2014, those were the tax years, so 2012 to 2015, when they saw her, they always understood that she was Touched by Angels. But I want to highlight a piece of evidence that I don't think we highlighted in our brief on that point, which is Joint Appendix 60 to 61, 1467 to 69. The very first time that she applied for an EFIN, which she did not get because they determined that she was unsuitable, she was not eligible for that. She listed Smith Tax and Insurance Business Group, that she was doing business as two ways. This was back in 2010. She was doing business as Touched by Angels, and she was doing business as Smith Tax and Insurance Group. From the very beginning, she identified herself as doing business as those two entities. And that carries through all along. You're taking a form that was a request for identification in 2010 and saying, well, that carried on. Where's that evidence? The evidence is that from the very beginning, she was this company. There is no evidence of any other. Is that what she told the agent? She told the agent, thank you, Judge Thacker, that she was the sole proprietor of Touched by Angels from 2009. That's what she said. Since 2009, I've been the sole owner. So then we can connect Touched by Angels to Smith Tax and Insurance Group through a couple of ways. Because that's the entity that we're talking about in 2013 to 2015, where there was no reporting of income received by that group. And it began then when she said, I'm doing business, she said this to the IRS as Touched by Angels and Smith Tax and Insurance Group. During a time period in which she confessed and admitted to the IRS agent that she was the sole owner. We go through all along. The jury can draw the inference that this business never changed. It was always amend to Ashley Smith. And she was the only one anybody ever dealt with. They saw a man. We know that there was at least one salary payment to somebody named Ben Smith that she authorized. And from all the way through, we know that Santa Barbara is depositing $90,000, $100,000 a year into an account that she controls. And she said in 2010 she was doing business as that entity. So the jury could infer from all of that that there was one person who owned this one tax business. And then when she did not report in 2013 and 2014 that she was operating a business that had gross receipts, she didn't report that. And when she didn't report any income from that business that she had underreported, the jury could infer that. The jury could also infer, of course, for 2015, when we do have the bank records, that she underreported her income. So the jury, it's not a question of whether or not there is every single piece of bank evidence that we could have submitted. We did. We didn't need to. The jury could infer from the beginning. Now, I do want to just quickly go to the summary. I want to kind of get back to what I was starting with, and this is the reason. I don't think our brief did a great job of setting out what testimony was offered when and what was objected to. The first thing that happens when Agent Archie testifies is she talks about, you know, did you hear testimony that Galloway didn't work for Jack in the Box? Yes. Okay. So she's referring to testimony that had been given. But then she goes to the IRP data. Now, that IRP data, if your honors will look in the exhibit, it's extensive, and it's not easy to understand. And so what she said is, if you look at the data, Jack in the Box never filed a W-2 for Mr. Galloway. So she is referring briefly to a witness's testimony, but then she's bringing in something that the jury could not have easily understood on its own and explained why that's relevant. And then the defendant objects and says simply, you know, this isn't fair because she's referring to a witness's testimony. She's not allowed to summarize what a witness said. And she had been very careful about that. Okay. And she says, plus, we think it's getting into the ultimate fact. Now, the ultimate fact that they said was what she testified to. If this information was false, then it would affect the ability for the IRS to properly calculate taxes. She didn't, that was a, if it was false, then it would. She didn't say it was. She didn't say it did. Now, they object. Okay. They objected to that testimony.  Right. So she's not allowed to give an opinion. Not an opinion. So they object to that testimony. Then they say, hey, how about this limiting instruction? The judge gives it. That is it for the objections. They never objected to the summary charts. They never even objected when they asked her, did Ms. Smith receive income? Do they never objected again after the limited instruction? Nope. Did they ask for a continuing objection? Nope. Not only that, but the very next day. Is that required to have a continuing objection? You make objection to this witness testimony? That's not required. Your Honor, they didn't object generally to Ms. Archie's testimony. They didn't object generally to her. In fact, they knew all along. She was in the courtroom the whole time. They consented to her testimony. They consented to those charts they're now objecting to on appeal. They said, we have no objection. And they were admitted as demonstrative evidence. So we have to review that on plain air? Absolutely. Yes. Okay. All right. Yes. Okay. If Your Honor wants me to turn to whether or not that's appropriate testimony, or appropriate evidence, summary evidence, we look at Rule 611. And I would respectfully suggest that the evidence of the Santa Barbara records, which, Your Honor, are from page 1570 to 98 in the Joint Appendix, do beg for a chart. They're not that easy to see. And so that chart that had the kind of comparison, I reported no income and here's how much Santa Barbara transferred to Smith Tax Insurance Group, that's a completely appropriate summary chart. Then in terms of the earned income... Did she object to the chart? No. Not at all. In fact, she... Is she objecting on appeal to that chart? Well, I think so. I mean, that was the only... It's unclear to me because I, you know, my dialogue, and I don't want to be critical, but my dialogue, essentially, with your colleague is that it's much more helpful to focus on a question and an answer. Right. And then see whether that was material and affected it. And my take on this is that the court responded to the objection and gave that instruction that they requested, and that seemed to satisfy them. And it was... That's right, Your Honor, which is why I sort of wanted to kind of walk the court through, and I, with all respect, appreciate that we didn't walk the court through that as carefully as we should have in our brief. But there was one limited objection to her testimony, which was that she was restating, you know, witness testimony. She never did it again. If you notice... And that she was getting to the ultimate issue. Thank you. Yes, Your Honor. Two objections. That's right. Two objections, but within... But in one sentence. And in one discrete type part of Ms. Archie's testimony. And if you notice, the very next witness, she doesn't summarize. She doesn't summarize what that next witness... She's talking about LaToya Johnson, I believe. You mean Ms. Ritchie doesn't summarize. That's right. Ms. Archie doesn't summarize. Archie, I'm sorry. She goes straight to the IRP data. She goes straight to... Was there any information in the IRP data that supported that she... I can't remember if it's she worked for... I have it here. But anyway, I can't remember. But she doesn't say, did so-and-so testify to this? She stopped that completely after the defendant objected to it. And the defendant never again objected. As I understand it, Judge Niemeyer, the one sort of piece of evidence that I hear defendant objecting to was one question which was asked on page 280 of the Joint Appendix, which was essentially, was there evidence that Ms. Smith received payments, received income from all of this? And she says yes. And so the complaint is, well, that goes to the ultimate issue. You mean appellant is objecting to it now on appeal? Now, did not object. Appellant did not object. I'm looking at that. Appellant did not object at trial. Absolutely not. The court was left to think the limited instruction was fine. That's right. Yes, I'll just say yes. But I'm sort of addressing Judge Niemeyer's question of what's objectionable, what do they think is objectionable on appeal? The one piece of evidence I think that they're especially objecting to is on page 280, to which they did not object at trial. But the one thing I want to note about that is that given the testimony of the witnesses, that yeah, I gave her money. I mean, that was, you know, the idea was this is who I paid. I don't think, one, that that, without an objection, that the district court acted arbitrarily or capriciously in failing to strike it, right? I mean, that ultimately comes down to what is this court's standard of review? It's plain error under Rule of Evidence 103E. And so did the district court plainly and obviously err in failing to strike a question, one question, about whether or not Ms. Smith received income? And the answer is no. It wasn't plain and obvious. Nobody objected to it. And several witnesses had testified, yeah, she got my money. So the other point I would make on it all is it's harmless, even if there were error. And it certainly doesn't affect her substantial rights under the plain error standard of review, because this jury heard a lot of evidence that she was this business. And they heard evidence that there was more than $100,000 transferred into an account that she owned for the tax preparation fees and that she then transferred. On the day she found out about the search warrant,  $100,000. Two transfers, one check to herself from that business. Who owns that business? Who is that business? Ms. Smith. She said so. And the jury could reasonably infer that. I'll address briefly the adequacy of the explanation on the supervised release condition. Yes, particularly the drug condition. Sure. Okay, Your Honor. So the drug condition was you have to request permission before you knowingly go somewhere where someone is selling drugs. And the only objection on that was really vagueness. So although the defendant challenged the drug testing condition on the basis that she had never been a drug user, the court sustained that. The court didn't impose the drug testing because she wasn't a drug user. So what was the sufficient explanation then for imposing this other one? Right. So I just want to make one thing, because this was something I wasn't really clear about until I went through everything in preparation for oral argument. When you then go from the drug testing to this don't go where you know drugs are being sold, that entire objection has to do with vagueness. So she says, well, particularly as applied to her, who she's not a drug user, it's vague and it's vague generally. The district court just said, you know, Fourth Circuit hasn't held that it's vague. And I think that addresses it. This is a legal issue. It's not a legal issue? I mean, in that sense, just categorically legal, the question is supposed to be individualized sentencing. And that's a positive sentence, correct? It is. So what is individualized about drug as to her? Anything in this record? Oh, no, absolutely not. Why would you put that there? What is it about her that make you tag her with this? Your Honor, she hasn't challenged the application of that condition to her. She's only challenged the adequacy of the explanation. But that's the same thing. The explanation is based upon tell me why you're imposing that on me. Right. Well, she's a felon and she's a convicted felon. And he says... A whole lot of people are convicted felons. They don't put that in there, do they? I think actually they do regularly put that in there. For everybody? I don't know the answer to that. But you're at the Western District of North Carolina? Do they all do that routinely? I think it is routinely, but I don't want to say. It's not in the record and I don't know. So I have seen it, but I'm not... Actually, my colleague Anthony Enright has handled most of these. But drug testing is also routinely put in as a supervised release condition. It wasn't for her here because she wasn't a drug user. I don't understand. And the court for me below did not adequately explain why the difference here, why this condition is imposed. Considering, as Chief Judge Gregory says, it's supposed to be individualized sentencing. It is, but the adequacy of the explanation does go to the objection that she raises. She only raised one objection. She only had one complaint about it. She didn't say, she said, it's vague. That's it. This court doesn't have to respond to arguments defendants don't make. And they're not arguing on appeal that it shouldn't have been applied. They're arguing on appeal that the explanation was inadequate. The only thing they argued was vagueness, and he responded to vagueness. I don't think there's... And let's just go back to Chavez Mesa. What does the Supreme Court say has to be enough? It is, as long as this court can conduct an adequate appellate review. The adequate appellate review is, did he adequately explain why it wasn't vague? And he responded to that question. It was a legal issue, and he said, if the Fourth Circuit holds that it's... It only applies knowingly. You have to know. Yeah, he did say that. Which limits it. Thank you, Judge Niemeyer. I should have mentioned that. There was a hypothetical that her lawyer offered. Well, if I go to a park, and we all know that parks... And he said, that's not it, because it has to be knowingly. And sort of said something to the effect of, I want to see the government bring that one. But I think that a district judge does not have the obligation to create arguments on behalf of the defendant and then respond to them. The district judge has to respond to the arguments that are made, and the district judge did that here. So I think it was adequate in that sense. If Ms. Smith was appealing as a substantive matter whether or not this condition was reasonably related and no greater intrusion than necessary, that's a different conversation that she's not presenting on appeal. If she were, we would be addressing it. She's not presenting that issue. She's saying you didn't tell me. Didn't the guidelines remove this condition in 2016? I think so, but I don't... And when was she sentenced? She was sentenced in... After 2016. But this court's decision in Kummer makes clear that a court has... that is not in the guidelines. That's fine. The conditions have to be consistent with the policy statements, but there's no problem with doing that. And she didn't make that argument in terms of, you can't do that. Now, that might go to the other condition, which was that she seeked permission. And she said the policy statement says I really should only have to do this if I'm not in compliance with a repayment schedule. I shouldn't have to ask permission to extend credit. And he responded to that and said no, given the amount of over $171,000 of restitution, it's a short tenure of supervised release. It's only one year. And that brings me to this court's decision in Boyd. In Boyd, of course, this court made clear that the adequacy of the explanation is also how much a court has to say also goes to how onerous is the condition and how long. This is one year. One year, and it's a question of does she have to ask permission to get credit, or can she knowingly go somewhere where she knows that drugs are being sold? I would respectfully suggest that he did respond to those issues and he responded to them adequately, particularly if we consider how much a judge has to say depending on how difficult those conditions are and how long they're going to be imposed. But I think the more important point is it's not up to the district judge to make the arguments. It's up to the defendant, and the district court in this case did respond to those arguments. No, it's up to the district court to give an adequate explanation for the sentence imposed. So you're saying that if the judge hypothetically imposes a condition that is totally disconnected, if there was no specific objection then, if there's an appeal, we can't look at whether or not it was adequate because they didn't question it there? I do, Your Honor, and I see that my time is up. May I answer your question, Chief Judge Gregory? I think my answer to your question is this. If they don't challenge the imposition of that condition, then this court just has to ask, is there enough for us to conduct appellate review? And what this court has said over and over again in terms of explanation is, yeah, it has to be individualized. He went through a bunch of conditions. He was clearly responding to her individual circumstances. On that one, she only argued vagueness, and he didn't explain it further than that except to say, he did ask the probation office. They talked about it briefly. That was it. I think that was enough because the court made clear that he knew this defendant. He was considering this defendant. He knew what she was charged with, what she had been convicted with, how much restitution she paid. I think it's adequate for this appellate review, particularly in this appeal, when she argued vagueness, and it's a legal issue. And she's not challenging the imposition of that as a matter of whether it should have been imposed. I think that had she argued that, we'd be in a different posture. Your Honors, if there are no further questions, the United States respectfully requests that this court affirm the judgment of the District Court. Thank you, Ms. Murray. It does need to go back to correct the restitution. I don't think she did only respond to vagueness, because she says, and it's right after the discussion about why drug testing shouldn't apply to her. She says, certainly it's applied to her since there's not much risk, again, with drugs, but as a general proposition. And then she says that it's unconstitutional. So that's not the only objection. It's also because she doesn't have a history of drug use. So, Your Honor, the way I read that statement, that assertion was, as applied to her, vagueness. It's all a complaint about vagueness, because we can have an as-applied challenge and we can have a general challenge. She says, I think part of the issue here is unconstitutional vagueness. But before that, she talks about her not being involved in drugs. And that's why the drug testing wasn't imposed. Right. I read that, and I read it a bunch of times. And my reading of it, and really, honestly, I was trying to figure out what he meant. Well, just like Ms. Baldwin and I disagreed on a reading, you and I can disagree on a reading. I read that as part of one vagueness objection, and she said, particularly as applied. And I would also suggest that the main thrust, the main thesis of the objection to that particular condition was vagueness. And as long as the district court responds to the main thesis of the defendant's argument, that's enough. Thank you, Your Honors. I appreciate your time. Thank you, Ms. Rae. Ms. Baldwin. Thank you, Your Honors. I'll start with the insufficiency argument. So, again, it's not enough that the jury could infer. Actual falsity is an element of a 17061 conviction. They had to infer beyond a reasonable doubt that her tax returns were false for not reporting Schedule C income. And look at what the government has pointed to. They pointed to an admission from an IRS agent. My question to you wasn't, it goes to the standard. In other words, once you have a verdict of the jury, then our determination is, did the jury have sufficient evidence from which it could conclude beyond a reasonable doubt that she was guilty? And so we look at the evidence most favorable to the government in that type of review and determine whether the jury could have, in that circumstance, reached a conclusion. I didn't want to misconstrue it. Have it misconstrued. Right. So, I mean, every element has to be supported by an admission to an IRS agent. And the IRS agent at JA197 said, I have no idea what Smith Tax and Insurance is. So the government wants to rest a conviction for not reporting Smith Tax and Insurance business receipts on an IRS agent that didn't even know what the company was. And then they also point to the fact Ms. Baldwin, what do you make of the admissions to owning these companies? There was only an admission to owning one company. And that's the problem here. The government assumes that they were one and the same. But, I mean, if you look at it, JA1645, Benjamin Smith. She only admitted to the agent that she owned one company. But what about the paperwork that Ms. Ray referred to where she identified herself as at least having some ownership interest in the others? I mean, I guess I disagree with that. She pointed to the EFIN application and there she's listed as a delegated user, which is, I believe there's nothing in the record to indicate delegated user equates to ownership. And then even then, though, ownership isn't enough. If someone else got income, it is true that, it is true as a matter of law that, you know, zero Schedule C income is correct. And, you know, they point to the biweekly paycheck and JA1500 also has a $25,000 check going to Benjamin Smith. You said that if a company exists, if an entity exists, if someone else got the money, then that company is not required to do a Schedule C? Is that what you said? Correct. Yes. So the IRS records custodian, and I think Agent Archie also testified at 78 and 102, that, I mean, depending on the business form and structureship, there could be a partnership. Under Section 162 of the Internal Revenue Code, income is earned by whoever owns the company. You can't say I have a company and it's got money, but it really went to someone else. That company still would have to report it on the 162 in the Internal Revenue Code, right? I mean, theoretically, all income, yes, has to be reported to the IRS. But the point here is, A, that she was charged specifically with not reporting sole proprietorship income, and also that, you know, according to the IRS records custodian, there was never a search done. So actually, Smith Tax and Insurance could have reported the gross receipts and sales, just on a different form. And so, and then they also want you to extrapolate from six months of bank records back to 2013 and 2014 to sustain her conviction. And then I'll just turn quickly to the summary evidence, because there was a little confusion here. We did not object to, yes. Was there evidence from Santa Barbara about transmissions to her, not the bank records, but just transmissions to her over the prior years for 13, 14, and 15? No. So I believe what the government presented was the Santa Barbara records showing the two Smith Tax and Insurance as a result of a return submitted, but there's a gap. So we don't know how the Santa Barbara fees got into, for example, the New Dominion account in 2015. They did have evidence. Well, that's tracing the money, but we have the numbers that Santa Barbara reported depositing for each of those years. I mean, one year is 130,000, one year is under 100,000, and so forth. Correct. We've never disputed. They proved that Smith Tax and Insurance made gross receipts. So the question of proof, then, is, okay, that money comes in to a bank account, and the question is, is that into a company for which she has to file a Schedule C? Correct. Correct. Yes, Your Honor. And so my time's over, but I really would just like to clear up the summary point, if I may. Just because I'm not objecting to the summary exhibit, demonstrative exhibit 145. That's fine. If Agent Archie had limited herself to, like, listen, the gross receipts were 300,000 and Ms. Smith reported zero, that's not what she did. She attributed the gross receipts to Ms. Smith as going to Ms. Smith. And that's what we have the issue with. That's what we're objecting to, not the exhibit itself. The inference that was drawn by the summary witness. And then I want to go back, and I want to address the issue of our objection, you know, was too general to cover this. And we would just disagree, because, you know, our objection here was this is improper summary evidence. I understand, but you have got to give me the question and the objection. And according to your colleague, you objected once. There was an exchange, and then the court gave the instruction. Now, she read the objection, and is there anything further that you objected to other than what she explained? No. So it is that one objection. Okay. Well, now we have to look at the question, look at the objection, and then the curative instruction. Right. And so let's do that. So the objection here was this is improper summary evidence, and the witness is usurping the jury's role by drawing her own conclusions. What did the court say? You objected to that, and then the court said right after that, well, maybe it has gone over the line a little bit. And then you requested an instruction, and the court gave it. Yes. Okay. We are talking about one question. This witness testified as to a bunch of witnesses over quite a bit of time. And your whole argument relates to this question, to which there was a response and a curative instruction. It might be a thin line, but our argument isn't that this one question went over the line. Our argument is a lot of this went over the line. You can't just say that. I read the transcript, and I found a lot of the questions good, fine. They were just perfectly fine under 611. And I do believe this conclusory stuff is inappropriate. But that is really very miniscule. Maybe I'm burying the lead here. So that one question we say, that is what gets us to the harm. That is what precludes the government from showing harmlessness. But there was still error. It may have been harmless in allowing Agent Archie to summarize witness testimony. The jury just heard for itself 10 minutes ago. And it was foundational. The witness was trying to build on a statement that the witness heard and trying to be accurate about it. And then taking that evidence and linking it to data. And that was the whole purpose for setting that forth. I mean, our argument is that is an improper use of Rule 611A. That gets into the effective second closing argument from the witness stand. I'm drawing conclusions about the date, pointing out where that person's testimony, I mean, is referred to in the data, the complex data that was before the court. Well, sure. It's packaging up the evidence already submitted nicely. But the jury didn't need that. And because the jury didn't need that, it got into this Agent Archie, I mean, she didn't even know the total amount transferred in the six months between accounts. And her appealant's counsel cross-examined her on that at trial, correct? There was an extensive cross-examination at trial, including on that point. Why does the defense offer a curative instruction when the court is out loud voicing some questions and concerns about where they were going and whether or not it was overreaching? You never bid against yourself. Why did you do that? I mean, I guess there's a difference of opinion. I think some attorneys say, like, listen, we're not going to put all our eggs in the basket on appeal. It's like, we're going to try and, you know, cover this error as well as we can. I don't mean that. I think you misunderstood. I'm not saying you lay down and roll over. But I'm telling you the point is that you say, wait a minute. You're right, Your Honor. The objection. Instead, you say, okay, wait a minute, I think we can resolve this. Let's do a curative instruction. First, let's make sure it's not sick before we offer a cure. You have a chance to prevent sickness. Keep it out, Your Honor. Instead, you say, well, I think we can do this. Let's cure it. Well, I don't understand that. Your Honor, honestly, I don't either. I mean, I think both parties kind of failed the district court here and could have done more, and then also we wouldn't be in this position we were. And so there was a bit of failing here in handling the summary witness, I think by all parties here. But we would just say, you know, we think we did enough to remedy our appeal. I appreciate the candor. Fair enough. I have one question. Could you briefly respond to opposing counsel's argument about the drug condition of supervised release? Sure. And I'll say, you know, also, Judge Thacker, I thought your questioning kind of encapsulated our point here. You know, there were two issues we brought to the district court's attention, both the vagueness, which that's actually the reason the Sentencing Commission did withdraw that condition, because it was pointed out by the Seventh Circuit as being a problem, and then also the fact it's just not related to her. She doesn't have any history of drug use, so why are you going to tell her she can't go to a park where there might be a drug deal? And then even Judge Coburn's like, well, I don't know why a probation officer would even tell someone they can go somewhere where someone's knowingly selling drugs. So that said, you know, and Ms. Ray does a very good job of explaining why perhaps there is some reason why this condition is proper. But the problem here is that discretion goes to the district court. The U.S. Attorney's Office does not have the power to say this release condition is reasonable. That is the district court's job here, and the district court judge's explanation here really just doesn't give us a basis to find that this discretionary condition was reasonably imposed on Ms. Amenta-Smith. So we would ask for, you know, to go back and for the district court to give it another look. Thank you. Thank you, Ms. Baldwin. I thank you both, Ms. Baldwin and Ms. Ray. We can't come down and greet you as we would love to do, but know very much that we appreciate your help on this case and your presentation. And I wish you well and be safe.
judges: Roger L. Gregory, Paul V. Niemeyer, Stephanie D. Thacker